IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

| | | |
|---|---|---|
| DAYMON SMITH | § | |
| VS. | § | CIVIL ACTION NO. 1:03-CV-1058 |
| UNITED STATES OF AMERICA | § | |

MEMORANDUM OPINION

Movant Daymon Smith, a federal prisoner, proceeding *pro se*, filed this motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255.

Procedural History

Movant was convicted in the United States District Court for the Eastern District of Texas of armed bank robbery resulting in death, in violation of 18 U.S.C. § 2113, and of aiding and abetting, in violation of 18 U.S.C. § 2. The United States Court of Appeals for the Fifth Circuit summarized the factual basis of these convictions as follows:

> On January 7, 1999, a robbery occurred at the Federal Savings Bank, East Marshall Branch in Longview, Texas. This was the third in a series of armed robberies and murders in the same area of Texas in late 1998 and early 1999. Betty Paddie and Elizabeth Flahie, the only two employees in the bank at the time of the robbery, were both shot during the robbery and Paddie subsequently died as a result. A high speed chase ensued when the robbers fled the scene of the bank robbery. The chase led into the city of Marshall, Texas. In Marshall, the getaway car slid into the parking lot of Moon's Washateria, and a passenger from the car fled on foot from the parking lot. The car, however, continued on and eventually crashed into a home nearby. The driver of the car, Chuck Stephens, was arrested. A gun was recovered from the car; the recovered gun was the gun used in the two previous robberies/murders and it was also used to shoot both Paddie and Flahie. It was later determined that the previous two murders were committed by Stephens and Kenneth Tatum.
>
> After an exhaustive manhunt and investigation, including patrol officers, police dogs, detectives, and FBI agents, Smith, Stephens, and Tatum were arrested

> and indicted. After a trial by jury in May of 2000, Smith was convicted of entering a bank with intent to commit a felony, armed robbery resulting in death, and the related aiding and abetting charges. The district judge sentenced Smith to life in prison without parole.

*United States v. Smith*, No. 00-41017, at *2 (5th Cir. Dec. 19, 2001) (unpublished).

Movant appealed the judgment. On appeal, movant argued that the evidence was insufficient to support his convictions, the charge of aiding and abetting was improper, the government intimidated witnesses, the prosecutor made improper statements, the government committed *Brady* violations, the court failed to conduct an *in camera* review, suggestive identification procedures were used, and statements he made should have been suppressed because they were the result of an invalid arrest warrant. The United States Court of Appeals for the Fifth Circuit affirmed the conviction. Movant's petition for writ of certiorari was denied. *Smith v. United States*, 537 U.S. 860 (2002).

## The Motion to Vacate Sentence

Movant raises three grounds for review. First, movant contends that the trial court abused its discretion by admitting a hearsay statement through Nicole Foster, a government witness, in violation of the Confrontation Clause. Movant also contends that counsel was ineffective for failing to: (1) impeach the testimony of government witnesses with their prior inconsistent statements; and (2) challenge the trial court's ruling on a jury note requesting to visit the crime scenes.

## Standard of Review

Title 28 U.S.C. § 2255 permits the district court, in certain instances, to vacate a judgment and release or resentence the prisoner, grant the prisoner a new trial, or otherwise correct the sentence. The statute provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation

>of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255.

Following a conviction and exhaustion of the right to direct appeal, a criminal defendant is presumed to stand fairly and finally convicted. *United States v. Shaid*, 937 F.2d 228, 231-32 (5th Cir. 1991) (en banc), *cert. denied*, 502 U.S. 1076 (1992). Thus, relief under Section 2255 is reserved for violations of constitutional rights and for a narrow range of errors that could not have been raised on direct appeal and would result in a complete miscarriage of justice if allowed to go uncorrected. *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992). Even if the movant alleges an error of constitutional magnitude, he generally may not raise the issue for the first time on collateral review without showing cause for the procedural default and actual prejudice resulting from the error. *Shaid*, 937 F.2d at 232. However, claims based on ineffective assistance of counsel may be raised for the first time in a collateral proceeding, whether or not the issue could have been raised on direct appeal. *Massaro v. United States*, 538 U.S. 500, 509 (2003).

Analysis

*I. Admission of Hearsay Statement*

Movant contends that the trial court abused its discretion by allowing prosecution witness Nicole Foster to testify regarding a telephone conversation she overheard her boyfriend, Chuck Stephens, make. Over defense counsel's objection, Ms. Foster testified that Mr. Stephens made a telephone call at 10:45 a.m. on January 7 from the Motel 6 where they were staying. (TR at 2778-79.) When asked to repeat Mr. Stephens' side of the conversation, to the best of her recollection,

Ms. Foster responded: "[Mr. Stephens] asked if Daymon was there, and I guess the other person said yes or whatever, and he said, 'Well I'll be there in about 20 minutes.' And he said, 'All right,' and hung up the phone." (TR at 2779-80.)

Federal Rule of Evidence 801(d)(2)(E) provides that a statement made by a co-conspirator during the course and in the furtherance of the conspiracy is not hearsay. *See Bourjaily v. United States*, 483 U.S. 171, 173 (1987). A co-conspirator's statement is admissible if the government proves by a preponderance of the evidence: (1) the existence of a conspiracy, (2) the statement was made by a co-conspirator of the defendant, (3) the statement was made during the course of the conspiracy, and (4) the statement was made in furtherance of the conspiracy. *United States v. Robinson*, 367 F.3d 278, 291-92 (5th Cir. 2004).

Following a hearing outside the presence of the jury, the Court found that Nicole Foster's testimony concerning the telephone call was admissible as a co-conspirator's statement under Federal Rule of Evidence 801(d)(2)(E). The Court explained its ruling as follows:

> The Court recognizes the foundation for this type of evidence as set out in *U.S. v. Bourjaily*. The . . . five-prong finding that the Court must make first under a rule 401(a) by a preponderance of the evidence: that there was a conspiracy in existence, that the declarant was a member of that conspiracy, that the defendant against whom the statement is offered was a member of that conspiracy, that the statement was made in furtherance of a conspiracy, and that the statement was made during the course of that conspiracy.
>
> It's been determined also that courts may take into consideration the content of the statement itself in determining any one or all of those factors and also the existence of a conspiracy.
>
> The Court, having heard arguments of counsel and having reviewed the transcript of proceedings of this case, finds that there is a preponderance of the evidence sufficient to show that it is more likely than not that a conspiracy existed to rob the bank. The Court is authorized, in making that finding, to look at all of the

evidence in the record. The Court finds in looking at that record that there were more likely than not two people involved in the robbery.

      Evidence before the Court shows that there were individuals casing the robbed bank in the afternoon approximately 4:00 before the robbery. There were approximately two individuals who committed the robbery the following day.

      Officers in pursuit of the Buick Regal or the automobile fleeing the robbery identified two black males, one the driver and one the passenger.

      Also, Nicole Foster believes that she identified Stephens and another black male traveling toward Longview shortly before the occurrence of the robbery.

      Two guns were found in the wrecked automobile after the robbery. It's undisputed that it was Stephens' automobile, and there is a preponderance leaning to support the fact that of the two people in the car, Smith was one of them, both at the time that the bank was being observed and cased the day before, at the time that the car was being pursued by the police. It is direct eyewitness testimony which the jury will have to weigh that Smith was, in fact, in that car and Smith got out of the car when it slid into the Laundromat.

      Secondly, the Court must show that the declarant, Stephens, was a member of the conspiracy, that is established by undisputed evidence. One, there are two people involved in a conspiracy to rob the bank. And it's undisputed that . . . Stephens was one of them.

      Thirdly, the Court must establish that Smith was a member of the conspiracy. In this connection, the Court finds there is a preponderance of the evidence that that is more likely than not and it preponderates when looking at the testimony of Foster, who, for instance, said sometime before the robbery she had met someone in the kitchen named Daymon. Also, the testimony of the bank teller who testified, Ms. Hampton, stated succinctly and without quoting the exact portions of the transcript that after Ms. Paddie locked the door, within a short period of time, something happened. And that something was that someone drove and parked in the very front of the bank about five minutes after four, that Paddie hadn't completely gotten from the door around the counter and that person walked to the door. They thought it was unusual that someone would come to the door at 4:00. That the person grabbed the door handles, the door handles were locked, and he immediately slapped the glass apparently with both hands. The bank was closed. He stood there a few seconds, looked and then spun around and went to the car on the passenger side and jerked the passenger door open. I believe at that time he glared back at the door. The witness states that she did see that individual, that individual was a black male, a young black male who had been to the bank that Wednesday afternoon before the robbery, the one

5

that tried to open the door, the one that hit the glass. She did see his picture again, and that was on the 10:00 telecast, at which time she realized that it looked like the man that tried to pull on the door on Wednesday at five minutes after four. She asked the defendant to stand up in the courtroom. He did. And she said, "that looks like the man, yes, sir, it does, it certainly does." She testifies that she first saw that person that she believed to be the defendant approximately eight feet away from where she was in the bank at that time.

On January 7th, 1999, so the testimony goes from Ms. Foster, at about 10:45 . . . a call was made by Stephens from the room she and Stephens were in at Motel 6, in her presence and in her hearing, within her hearing distance. The call was made from Motel 6 to the home of Marie Smith--I believe that is the grandmother of Daymon Smith--where from time to time he resides or lives. The call lasted about nine seconds.

The Court finds that that, combined with the other eyewitness testimony, declaration by Stephens, two people seen in the car by a police officer, person seen leaving the car later by a witness, . . . develops a finding that Smith was a member--at least a preponderance of the evidence shows that Smith was a member of that conspiracy.

Whether the statement was made in furtherance of the conspiracy must be read in context and from all four corners of the transcript and the testimony that was given and the sequence of time and the interrelationship of the statement, the cars, the guns, the observations, casing the bank, running onto the porch, having seen Stephens and another black male in the car headed for Longview shortly before the robbery by Ms. Foster leads the Court further in the find that the statement was made in furtherance of that conspiracy. Specifically, Foster heard Stephens say to someone on the other phone, "Daymon, I'll be there in a couple of minutes." . . . . That means and imparts to the listener, taken in conjunction with the sequence of events before and after that statement, leads this Court to find by a preponderance of the evidence that the statement was made in furtherance of the conspiracy and it was made during the course of the conspiracy in that it was made immediately before the robbery to a person named Daymon who was just hours later seen exiting a getaway car by a person who knew him from high school. And shortly after that, his girlfriend sees him moving into the house and, according to her grand jury testimony, looking out the window and saying something about the FBI . . . . in context with sirens blaring past the house and the anxiousness of his presence.

On that basis and on the basis of the full record, the court overrules defendant's objection with regard to the Sixth Amendment and the Due Process. The Court will admit that out-of-court statement of the non-testifying co-conspirator

>against the defendant in that the statement falls squarely within the exception for co-conspirators under Rule 801(d)(2)(E).

(TR at 2768-73.)

Movant argues that the evidence was insufficient to support the court's finding that Mr. Stephens' statement was admissible under Rule 801(d)(2)(E). The trial court found that the government had proven each of the required elements for admissibility by a preponderance of the evidence. Movant now argues that the evidence was provided by unreliable government witnesses who lacked credibility. The credibility of the witnesses was an issue for the fact-finder. When movant challenged the sufficiency of the evidence on direct appeal, the Fifth Circuit found that the evidence was sufficient to establish movant's guilt beyond a reasonable doubt. The trial court's ruling that there was a preponderance of the evidence demonstrating that Mr. Stephens' statement was admissible was not erroneous.

Movant also alleges that admission of the statement violated the Confrontation Clause. However, the Confrontation Clause does not apply to Mr. Stephens' statement because it was not testimonial in nature. *United States v. Holmes*, 406 F.3d 337, 347-48 (5th Cir. 2005); *Robinson*, 367 F.3d at 292 n.20.

## II. *Ineffective Assistance of Counsel*

In order to establish ineffective assistance of counsel, movant must prove counsel's performance was deficient and the deficient performance prejudiced movant's defense. *Strickland v. Washington*, 466 U.S. 668, 689-92 (1984). Because the movant must prove both deficient performance and prejudice, failure to prove either will be fatal to his claim. *Johnson v. Scott*, 68 F.3d 106, 109 (5th Cir. 1995).

Judicial scrutiny of counsel's performance is highly deferential. *Strickland*, 466 U.S. at 689. As a result, there is a strong presumption that counsel rendered reasonable, professional assistance and that the challenged conduct was the result of a reasoned trial strategy. *Id.*; *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). To overcome the presumption that counsel provided reasonably effective assistance, movant must prove his attorney's performance was objectively unreasonable in light of the facts of movant's case, viewed as of the time of the attorney's conduct. *Strickland*, 466 U.S. at 689-90. A reasonable, professional judgment to pursue a certain strategy should not be second-guessed. *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983).

In addition to proving counsel's performance was deficient, movant is required to show prejudice resulting from counsel's inadequate performance. *Strickland*, 466 U.S. at 691-92. Movant must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Mere allegations of prejudice are insufficient; movant must affirmatively prove, by a preponderance of the evidence, that he was prejudiced as a result of counsel's deficient performance. *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994), *cert. denied*, 514 U.S. 1071 (1995).

A.   *Inadequate Preparation and Cross-Examination*

Movant contends that counsel was ineffective for failing to prepare for, and adequately conduct, cross-examination of four government witnesses: Elizabeth Flahie, Vernon Jackson, LaTasha Alford, and FBI Special Agent Cliff Carruth.

*1.     Elizabeth Flahie*

During direct examination, Elizabeth Flahie identified movant as the man who robbed the bank and shot her and Betty Paddie. (TR at 2866.) Ms. Flahie testified that she was shown a lineup of photographs while she was in the hospital, but was unable to identify anyone in the lineup. (TR at 2873.) Ms. Flahie testified that she was on heavy doses of a pain killer and her recollection of the lineup was "fuzzy." (TR at 2874.) Ms. Flahie testified that she saw movant's picture on television or in the newspaper several weeks later, and identified him as the shooter. (TR at 2874.)

On cross-examination, counsel asked whether Ms. Flahie had given a basic description of the shooter to the 911 operator. (TR at 2878.) Ms. Flahie responded affirmatively. (TR at 2878.) Ms. Flahie also responded affirmatively when counsel asked whether she remembered speaking with a police detective on January 22, and giving him a description of the shooter. (TR at 2878-79.) Ms. Flahie acknowledged that she was only able to identify movant after she saw his picture associated with news coverage of the robbery and shooting. (TR at 2880.) Counsel asked whether police officers had shown Ms. Flahie any additional photographic lineups between the first lineup and her identification of movant, but she was unable to remember. (TR at 2880-81.)

Movant alleges counsel's investigation and cross-examination were deficient in several respects. Movant contends that counsel did not point out during cross-examination that the original description given by Ms. Flahie does not match his description. Movant complains that counsel did not specifically ask Ms. Flahie about a photographic lineup shown to her by Detective Terry Davis where she was unable to identify the shooter, although she had testified that she only remembered one lineup. Movant contends that counsel should have found out what kind of pain killers Ms.

9

Flahie was taking and how they might have affected her memory. Finally, movant contends that counsel should have interviewed Ms. Flahie prior to trial.

The record shows that counsel was able to point out the flaws in Ms. Flahie's identification. Although movant believes that counsel should have been more aggressive on cross-examination, he has not demonstrated that there is a reasonable probability that the outcome of the trial would have been different if counsel had aggressively attacked Ms. Flahie on cross-examination. Counsel could reasonably have concluded that aggressively cross-examining the victim might have backfired.

   *2.     Vernon Jackson*

Vernon Jackson testified on direct examination that he heard a sound like a firecracker going off while he was waiting at the drive through window at the bank. (TR at 2818, 2822.) After he heard the noise, Mr. Jackson looked up and saw the shooter. (TR at 2822-23.) Mr. Jackson was later shown Mr. Stephens at a lineup, but he was certain that Mr. Stephens was not the shooter. (TR at 2825-26.) Mr. Jackson stated that he was able to identify the movant as the shooter after he saw his picture on a newscast several days after the incident. (TR at 2826.)

Movant contends that counsel failed to impeach Mr. Jackson with prior inconsistent statements in which he gave descriptions of the shooter that did not match movant's description. However, this is inaccurate. Defense counsel did cross-examine Mr. Jackson concerning his descriptions of the shooter. (TR at 2835, 2836, 2846.) Next, movant contends that, in light of Ms. Flahie's testimony, Mr. Jackson could not possibly have seen the shooter from his position. However, that was a question for the jury.

Finally, movant contends that Mr. Jackson's identification from the television newscast was faulty. During a pre-trial suppression hearing, Mr. Jackson testified that he saw a photograph of

10

plaintiff on the news. However, the footage of the news story retained by the station showed video of movant being arrested and a still photograph of his co-defendant, Mr. Stephens. Mr. Jackson stated that he was certain he saw movant's photograph in a box over the shoulder of the anchor. The news director of the station, Mr. Andy Shaw testified that it was possible that such a photograph aired during the news program, but such images are not saved for later viewing. The trial court denied the motion to suppress. Defense counsel chose not to revisit the issue at trial, but did attack the identification as tainted by the news coverage. It cannot be said that this tactic was objectively unreasonable, or that there is a substantial likelihood that the result of the trial would have been different if counsel attempted to impeach Mr. Jackson with the portion of the newscast that was available.

        *3.*     *LaTasha Alford*

LaTasha Alford testified that she had known the movant and Mr. Stephens since junior high school. (TR at 2699-703.) Ms. Alford testified that she saw Mr. Stephens driving the getaway car near the laundromat in Marshall, Texas and that she saw movant exit the car from the passenger side. (TR at 2689-703.) Ms. Alford also testified that she saw movant running between the laundromat and the dentist's office. (TR at 2703.)

Movant contends that, from her position, Ms. Alford could not have seen him run between the laundromat and the dentist's office. Movant contends counsel performed deficiently by failing to draw the jury's attention to this alleged falsehood. Movant also contends that counsel failed to impeach Ms. Alford with her prior inconsistent statements regarding her identification of movant. Contrary to movant's allegations, defense counsel did address these issues on cross-examination.

(TR at 2704-11.) Counsel's failure to pursue the matter further does not amount to ineffective assistance of counsel.

### 4. *Special Agent Cliff Carruth*

Movant alleges that FBI Special Agent Cliff Carruth tampered with the caller identification on his grandmother's telephone. Movant contends counsel should have called an expert witness to testify as to the alleged tampering.

In general, the decision to call witnesses is a trial strategy within the trial counsel's domain. *United States v. Harris*, 408 F.3d 186, 190 (5th Cir.), *cert. denied*, _ U.S. _ , 126 S. Ct. 297 (2005); *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985). Complaints about the failure to call witnesses are disfavored on collateral review because allegations of potential testimony are largely speculative. *Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir. 1986). As a result, the court should view such claims with great caution, especially where the only evidence of what a witness would say is from the movant. *Id.* The movant must show that testimony would have been favorable and that the witness would have testified at trial. *Alexander*, 775 F.2d at 602.

Movant has not met his burden. Movant has not presented any evidence that the expert would have testified or what he would have testified to at trial. Instead, movant relies on his self-serving statements that the witness would have testified and that the testimony would have somehow been favorable to him. Thus, movant has not demonstrated that he was prejudiced by counsel's failure to call the expert witness.

### B. *Failure to Object to Denial of Jury's Request to Visit Crime Scene*

During its deliberation, the jury sent a note to the trial court requesting permission to visit the bank and the area of Marshall where the high speed chase took place. The jury indicated that it

was having difficulty reaching a unanimous verdict "because of the incongruity of the witness testimony." (TR at 3404.) After reading the note on the record, the trial court stated that the jury would not be allowed to visit the scenes because there was "more than a substantial amount of photography and pictures available to [the] jury." (TR at 3405.) The defense did not object to the trial court's ruling. (TR at 3405.)

The decision whether to grant a jury view of the scene rests within the discretion of the trial court and is reviewable only for abuse of discretion. *Stokes v. Delcambre*, 710 F.2d 1120, 1129 (5th Cir. 1983); *see also United States v. Woolfolk*, 197 F.3d 900, 905-06 (7th Cir. 1999), *cert. denied*, 529 U.S. 1081 (2000). Before the parties were allowed to respond to the jury's request to visit the locations, the trial court had indicated that the request would be denied. Movant has not demonstrated that there is a reasonable probability that the trial court would have changed its ruling if counsel had objected, or that the result of the proceeding would have been different. Thus, this ground for review lacks merit.

## Conclusion

For the reasons set forth above, this motion to vacate, set aside or correct sentence will be denied. A final judgment will be entered in accordance with this memorandum opinion.

**SIGNED** this the **12** day of **March, 2007.**

_____
Thad Heartfield
United States District Judge